# Exhibit A

MATTIONI, LTD.
BY:  JOSEPH F. BOUVIER, ESQUIRE
Attorney ID No. 02530-1988
1316 Kings Highway
Swedesboro, NJ 08085
(856) 241-9779

Attorney for Plaintiff

| | |
|---|---|
| TIFFANY MICHALAK : | SUPERIOR COURT OF NEW JERSEY |
| : | LAW DIVISION |
| Plaintiff : | GLOUCESTER COUNTY |
| v. : | |
| : | DOCKET NO. |
| SERVPRO INDUSTRIES, INC. : | |
| and : | |
| O'DONNELL RESTORATION LLC d/b/a : | |
| SERVPRO OF WOODBURY/DEPTFORD : | |
| and : | |
| SCOTT O'DONNELL : | |
| : | **CIVIL ACTION COMPLAINT** |
| Defendants : | **AND JURY TRIAL DEMAND** |
| : | |

Plaintiff, Tiffany Michalak (formerly DiOrio), by and through her attorneys, Mattioni, Ltd., hereby brings this Complaint against the defendants, stating as follows:

1. Plaintiff Tiffano Michalak is an adult individual who resides at 105 Oriole Drive, Logan Twp., New Jersey 08085 and is a citizen and resident of the State of New Jersey.

2. Defendant ServPro Industries, Inc. (hereafter "ServPro Industries") is believed to be a corporation organized and existing under the laws of the State of Nevada, with a principal place of business at 801 Industrial Boulevard, Gallatin, Tennessee 37066.

3. Defendant ServPro Industries is a cleanup and restoration business with franchise locations across the country.

4. Defendant O'Donnell Restoration LLC d/b/a ServPro of Woodbury/Deptford (hereafter "ServPro") is believed to be a Limited Liability Company organized and existing

1

under the laws of the State of New Jersey, with its principal place of business at 610 Ryan Avenue, in the Borough of Westville, County of Gloucester, New Jersey 08089.

5. Defendant Scott O'Donnell is an adult individual who is believed to reside at 120 Clearwater Drive, Media, PA 19063 and is believed to be a citizen and resident of the Commonwealth of Pennsylvania.

6. At all times pertinent hereto, defendant O'Donnell owned defendant ServPro, which was a franchise of defendant ServPro Industries, and he operated the ServPro business at the 610 Ryan Avenue address in Westville, New Jersey.

7. Plaintiff was employed by defendant ServPro from December 11, 2014 to December 11, 2015 when she was wrongfully terminated.

8. While employed with defendant ServPro, plaintiff performed primarily sales and marketing work. A significant part of her work duties included visiting businesses and attending marketing and networking events.

9. During plaintiff's tenure with defendant ServPro, defendant had a sexist work culture due to the misogynistic and abusive behavior of defendant O'Donnell. Women were seen as inferior and were treated in a subservient manner and as objects of desire and/or objects of derision rather than equals to men, and defendant O'Donnell would make chauvinistic comments indicating that he felt men were superior to women, including statements such as "men do things better than women," "men are more detail-oriented," and "you women don't know anything about bank accounts or managing money."

10. Moreover, women were subject to extensive and demeaning verbal abuse by defendant O'Donnell based on their gender. He would curse at the female employees and scream at them on a regular basis.

2

11. While employed by defendant, plaintiff experienced grossly inappropriate, harassing, and cruel treatment and comments toward her, based on her gender, on a regular basis by defendant O'Donnell. He frequently called plaintiff "dumb" and "stupid," and he often screamed and cursed at her, making it seem like he felt she did not know how to do her job.

12. For example, on one occasion, plaintiff brought a customer in to work, and she entered defendant O'Donnell's office to obtain from him the information the customer needed. Defendant, for no reason, became livid, yelling at plaintiff, "You need to get the f*** out of here. Do you think you're the only person who is trying to get the customer's projects done?" When plaintiff attempted to explain what she needed, he refused to listen and began screaming at plaintiff, verbally abusing her in a vicious manner.

13. Another time, one day after a job fair in October 2015 that plaintiff attended on behalf of ServPro, defendant O'Donnell was told someone from the job fair had come in for an appointment they had scheduled with defendant. On his way to his office, he crossed paths with plaintiff and began berating her, screaming, "what the f*** do you think you're doing? I have to interrupt what I'm doing to interview someone! Are you stupid? Are you f***ing stupid??"

14. Another time, on or about December 8, 2015, plaintiff went to see defendant O'Donnell in his office to ask if he might authorize a company donation to a needy family in the area. He started yelling, "Are you f***ing kidding me?? Are you stupid?? You're a f***ing retard!!" Plaintiff replied that he didn't have the right to speak to her that way, whereupon he leaned toward her and said, "you know what, why don't you take the rest of the day off and get the f*** out of here."

15. Plaintiff was not sure at that point if she still had a job, as she thought defendant might actually have just fired her. She went outside and was approached by three female co-

3

workers who had heard O'Donnell yelling at plaintiff. They told plaintiff it would be okay, that defendant was under a lot of pressure because the company was having money issues and no work coming in. Plaintiff replied that it did not give him the right to treat her that way.

16. Plaintiff went back in to speak to defendant O'Donnell, who told his assistant that he did not want to speak to plaintiff and that from that point on, plaintiff would have to go through the new Marketing Manager and could not speak to him directly.

17. The harassment and retaliation plaintiff suffered as a result of defendant's actions had the foreseeable result of making plaintiff's working conditions intimidating, hostile, and offensive.

18. As a result of defendant O'Donnell's harassment and abuse towards her, plaintiff called defendant ServPro Industries' Human Resources Department at its national headquarters in Tennessee to formally complain about defendant O'Donnell's misconduct. She informed the HR representative about defendant O'Donnell's verbal abuse, his cursing and yelling, and how he had treated her. Plaintiff was told that a full investigation would be performed.

19. Over the next two days, plaintiff had very little interaction with defendant O'Donnell.

20. However, on or about December 11, 2015, just days after her report to the HR Department about defendant O'Donnell's harassment, when plaintiff reported to work, she was told that defendant O'Donnell wanted to see her in his office. When she arrived, defendant O'Donnell told her she was being terminated. When plaintiff asked why, defendant O'Donnell told her he wanted to "start new" and that he wanted "a different culture."

21. Plaintiff was never informed of the results of any investigation that may have been performed by defendants into the allegations of harassment, and, upon information and

4

belief, plaintiff avers that defendants took no meaningful action as a result of her complaints against defendant O'Donnell.

22. Subsequently, after plaintiff applied for and received unemployment compensation benefits, defendant ServPro appealed the State of New Jersey's award of unemployment compensation benefits to plaintiff, falsely reporting that plaintiff was terminated for willful misconduct, which was pretextual and not the real reason for the termination. This action was taken with the specific intent to harm plaintiff and to try to prevent her from obtaining any income while she was unemployed, in retaliation for her having reported defendant O'Donnell's harassment.

23. As a result of defendants' wrongful conduct, plaintiff has in the past and will continue in the future to suffer severe mental anguish, pain, embarrassment, depression, anxiety, and loss of the enjoyment of life.

24. As a result of defendants' wrongful conduct, plaintiff has been and will in the future be hindered and prevented from attending to her usual and customary duties and occupations, all to her humiliation, embarrassment, with loss of pleasures and enjoyment of life, and with great financial loss and loss in earning capacity. In particular, since her termination from defendant's employment, plaintiff was unable to obtain permanent employment comparable to the position and salary she had with defendant.

25. As a result of defendants' wrongful conduct, plaintiff has been required and will continue to require and undergo medical attention and care and to expend various sums of money and incur various expenses for the injuries and residuals she has suffered, any or all of which may continue for an indefinite period of time in the future.

5

Case 1:18-cv-01727-RBK-KMW Document 1-1 Filed 02/07/18 Page 7 of 19 PageID: 11
GLO-L-001440-17  12/05/2017 4:37:29 PM  Pg 8 of 18  Trans ID: LCV20175862839

26. As a direct result of the aforesaid occurrence, plaintiff has incurred and may hereafter incur other financial expenses and losses.

## COUNT ONE
## PLAINTIFF v. DEFENDANT O'DONNELL RESTORATION LLC
## d/b/a SERVPRO OF WOODBURY/DEPTFORD
## GENDER DISCRIMINATION

27. Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 26 above as if fully set forth herein.

28. Defendant ServPro's employees, including defendant O'Donnell, maintained a sexist work environment and culture at the Westville location where plaintiff worked, as women were treated as objects of desire and/or targets to be denigrated, rather than as professionals.

29. The terms and conditions of employment for female employees of defendant ServPro were far less favorable than for male employees, and included verbal abuse, cursing, yelling, and derogatory slurs, behaviors that were persistent and continuing throughout plaintiff's employment and therefore constituted a continuing violation of plaintiff's rights.

30. Ultimately, the agents, managers, and supervisors of defendant ServPro wrongfully terminated plaintiff's employment and then wrongfully appealed the award of unemployment compensation benefits to her.

31. Male employees were treated much more favorably then female workers, as they were not subject to the extreme abuse and harassment by defendant O'Donnell. In addition, male employees were treated more leniently for infractions of company rules, such as attendance and lateness policies, as well as for resisting and speaking up about O'Donnell's misconduct.

32. Agents, managers, and supervisors of defendant ServPro were aware of the discriminatory treatment against women but failed to properly investigate, address or mitigate the employees' behavior. This failure effectively condoned the gender discrimination.

6

33. Defendant ServPro should have prevented the ongoing inappropriate actions taken by its employees.

34. Defendant ServPro's employees' conduct toward plaintiff was due to her gender. Similarly situated male employees were not treated in the same manner as plaintiff.

35. The above acts and failures to act constitute discrimination against plaintiff on the basis of her gender, in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq*.

36. Any proffered non-discriminatory reason for defendant's gender discrimination is illegitimate and a mere pretext.

37. As a direct and proximate result of defendant's conduct, plaintiff has suffered extensive financial loss, emotional injuries, physical ailments, and other damages as described above.

38. Defendant's conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff. This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering defendant subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

## COUNT TWO
## PLAINTIFF v. DEFENDANT SERVPRO INDUSTRIES, INC.
## GENDER DISCRIMINATION

39. Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 38 above as if fully set forth herein.

40. At all times pertinent hereto, defendant ServPro Industries controlled the Human Resources policies and procedures of defendant ServPro and exercised control over defendant ServPro's employment and personnel decisions. As such, defendant ServPro Industries and defendant ServPro were joint employers and thus may share in liability for gender discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq*.

41. Defendant ServPro Industries is therefore vicariously liable to plaintiff for defendant ServPro's discrimination against plaintiff on the basis of her gender.

42. In addition, or in the alternative, defendant ServPro acted as an agent of defendant ServPro Industries, with actual or apparent authority over defendant ServPro's HR practices, and defendant ServPro Industries is therefore liable to plaintiff for the gender discrimination she suffered at the hands of defendant ServPro.

43. In addition, or in the alternative, defendant ServPro Industries was negligent in its oversight of defendant ServPro's human resources practices and management and in failing to provide proper policies and procedures for its franchisee, and enforcing same, with regard to workplace conduct, non-harassing and non-discriminatory treatment of employees, investigation of harassment and discrimination complaints, and proper review and checks and balances on the authority to terminate employees.

44. Any proffered non-discriminatory reason for defendant's gender discrimination is illegitimate and a mere pretext.

45. As a direct and proximate result of defendants' conduct, plaintiff has suffered extensive financial loss, emotional injuries, physical ailments, and other damages as described above.

46. Defendant's conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff. This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering defendant subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

## COUNT THREE
## PLAINTIFF v. DEFENDANT O'DONNELL RESTORATION LLC
## d/b/a   SERVPRO OF WOODBURY/DEPTFORD
## HOSTILE WORK ENVIRONMENT HARASSMENT

47. Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 46 above as if fully set forth herein.

48. The inappropriate and unwelcomed behavior of defendant ServPro's employees, including defendant O'Donnell, was severe and pervasive, altering the terms and conditions of plaintiff's employment and creating an abusive and hostile work environment for plaintiff, which was persisted and continued throughout plaintiff's employment with defendant ServPro.

49. The abusive work environment was hostile to plaintiff and would also be recognized as hostile by reasonable persons in her position.

50. As a result of the harassment, plaintiff suffered emotional distress and injury, as well as financial damages.

9

51. The harassment and hostile work environment was directed against plaintiff because of her gender. Similarly situated male employees were not treated in the same manner as plaintiff.

52. Agents, managers, and supervisors of defendant ServPro were aware of the repeated harassment but failed to properly investigate, address or mitigate the employees' behavior. This failure effectively condoned the sexual harassment and the hostile work environment created as a result.

53. Defendant ServPro should have prevented the inappropriate actions taken by its employees, which were an ongoing and continuing violation of plaintiff's rights.

54. Despite repeated complaints by plaintiff of the unwanted conduct, defendants' agents, managers, and supervisors failed to conduct a fair and unbiased investigation of plaintiff's allegations.

55. In addition, as a result of the complaints, defendants' agents, managers, and supervisors failed to take appropriate measures to mitigate the actions against plaintiff, but instead harassed and retaliated against her further, thus exacerbating the hostile work environment.

56. The above acts and failures to act constitute a hostile work environment based on plaintiff's gender, in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq*.

57. Any proffered non-discriminatory reason for defendants' creation of a hostile work environment is illegitimate and a mere pretext.

58. As a direct and proximate result of defendants' conduct, plaintiff has suffered extensive financial loss, emotional injuries, physical ailments, and other damages as described above.

59. Defendant's conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff. This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering defendant subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

## COUNT FOUR
## PLAINTIFF v. DEFENDANT SERVPRO INDUSTRIES, INC.
## HOSTILE WORK ENVIRONMENT HARASSMENT

60. Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 59 above as if fully set forth herein.

61. At all times pertinent hereto, defendant ServPro Industries, Inc. controlled the Human Resources policies and procedures of defendant ServPro and exercised control over defendant ServPro's employment and personnel decision. As such, defendant ServPro Industries, Inc. and defendant ServPro were joint employers and thus may share in liability for hostile work environment harassment in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq.*

62. Defendant ServPro Industries is therefore vicariously liable to plaintiff for defendant ServPro's creation and allowance of a hostile work environment toward plaintiff on the basis of her gender.

63. In addition, or in the alternative, defendant ServPro acted as an agent of defendant ServPro Industries, with actual or apparent authority over defendant ServPro's HR practices, and defendant ServPro Industries is therefore liable to plaintiff for the hostile work environment created and permitted by defendant ServPro.

64. In addition, or in the alternative, defendant ServPro Industries was negligent in its oversight of defendant ServPro's human resources practices and management and in failing to provide proper policies and procedures for its franchisee, and enforcing same, with regard to workplace conduct, non-harassing and non-discriminatory treatment of employees, investigation of harassment and discrimination complaints, and proper review and checks and balances on the authority to terminate employees.

65. Any proffered non-discriminatory reason for defendant's creation and allowance of a hostile work environment is illegitimate and a mere pretext.

66. As a direct and proximate result of defendants' conduct, plaintiff has suffered extensive financial loss, emotional injuries, physical ailments, and other damages as described above.

67. Defendants' conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff. This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering defendant subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

## COUNT FIVE
### PLAINTIFF v. DEFENDANT SCOTT O'DONNELL
### AIDING AND ABETTING THE COMMISSION OF DISCRIMINATORY ACTS

68. Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69. When he committed his abusive and hostile acts toward plaintiff, defendant O'Donnell knew his conduct, on behalf of defendants ServPro and ServPro Industries, violated anti-discrimination and anti-harassment laws.

70. Defendant O'Connell's abusive and hostile actions thus constitute aiding and abetting of defendant ServPro and defendant ServPro Industries' discriminatory conduct toward plaintiff and creation of a hostile work environment for her, in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq.*

71. Any proffered non-discriminatory reason for defendants' aiding and abetting of discriminatory acts is illegitimate and a mere pretext.

72. As a direct and proximate result of defendants' conduct, plaintiff has suffered extensive financial losses, emotional injuries, physical ailments, and other damages as described above.

73. Defendant's conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff. This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering

defendant subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

## COUNT SIX
## PLAINTIFF v. ALL DEFENDANTS
## RETALIATION

74. Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. After plaintiff complained of harassment, her employment was, within days, terminated by defendants. This termination constituted unlawful retaliation for her having reported defendant O'Connell's harassment, in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq*.

76. Defendants also illegally retaliated against plaintiff by failing to address her complaints and failing to conduct a proper investigation, appealing her award of unemployment compensation benefits, and contending that plaintiff had been fired due to attendance reasons, which was not the true reason for the termination.

77. Any proffered non-discriminatory reason for defendants' retaliation against plaintiff is illegitimate and a mere pretext.

78. As a direct and proximate result of defendant's conduct, plaintiff has suffered extensive financial loss, emotional injuries, physical ailments, and other damages as described above.

79. Defendants' conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff. This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering defendants subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

## COUNT SEVEN
## PLAINTIFF v. DEFENDANTS
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80. Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81. By their actions, defendants intended to and in fact did cause plaintiff substantial emotional distress.

82. The conduct of defendants was outrageous and inappropriate. The harassment directed at plaintiff and subsequent conduct of defendants, including the termination of plaintiff's employment, was well beyond all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community.

83. As a direct and proximate result of defendants' actions, plaintiff suffered injuries and damages as described above.

84. Defendants' conduct was willful, wanton, reckless and in total disregard for the health and safety of plaintiff. This conduct was egregious and outrageous, rendering defendants

subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants jointly and/or severally for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all Counts of the within Complaint.

## DEMAND FOR COMPLIANCE WITH NEW JERSEY COURT RULES 1:5-1(a) and 4:17-4(c)

The undersigned attorney hereby demands, pursuant to the provisions of R. 1:5-1(a) and R. 4:17-4(c), that each party serving pleadings or interrogatories and receiving responses thereto shall serve copies of all such pleadings, interrogatories, and responses thereto to the undersigned.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other actions pending in any court or any pending arbitration proceeding involving the matter in controversy, and no other actions are presently contemplated, nor is the identity presently known of any other party who should be joined in this action or who is subject to joinder.

## DESIGNATION OF TRIAL COUNSEL

PLEASE BE NOTIFIED that pursuant to Rule 4:25-4, Joseph F. Bouvier, Esquire is hereby designated as trial counsel in the above-captioned litigation.

MATTIONI, LTD.

Dated: 12/4/17     BY: _Joseph F. Bouvier_
                       JOSEPH F. BOUVIER, ESQUIRE
                       Attorney for Plaintiff

16

**Appendix XII-B1**



| CIVIL CASE INFORMATION STATEMENT (CIS) Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1 **Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed** | FOR USE BY CLERK'S OFFICE ONLY PAYMENT TYPE: ☐CK ☐CG ☐CA CHG/CK NO. AMOUNT: OVERPAYMENT: BATCH NUMBER: |
|---|---|

| ATTORNEY / PRO SE NAME JOSEPH F. BOUVIER | TELEPHONE NUMBER (856) 241-9779 | COUNTY OF VENUE Gloucester |
|---|---|---|
| FIRM NAME (if applicable) MATTIONI, LTD | | DOCKET NUMBER (when available) |
| OFFICE ADDRESS 1316 KINGS HIGHWAY SWEDESBORO, NJ 08085 | | DOCUMENT TYPE COMPLAINT |
| | | JURY DEMAND ■ YES ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) TIFFANY MICHALAK | CAPTION SERVPRO INDUSTRIES, INC., O'DONNELL RESTORATION LLC d/b/a SERVPRO OF WOODBURY/DEPTFORD AND SCOTT O'DONNELL |
|---|---|
| CASE TYPE NUMBER (See reverse side for listing) 618 | HURRICANE SANDY RELATED? ☐ YES ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ■ NO IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING? ☐ YES ■ NO | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ YES ■ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) ☐ NONE ■ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION |
|---|
| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ■ YES ☐ NO | IF YES, IS THAT RELATIONSHIP: ■ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) ☐ FAMILIAL ☐ BUSINESS |
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ■ YES ☐ NO |
| USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION |

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ YES ■ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED? ☐ YES ■ NO | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: *Joseph F. Bouvier*

Effective 06/05/2017, CN 10517

page 1 of 2

**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
- 151 NAME CHANGE
- 175 FORFEITURE
- 302 TENANCY
- 399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502 BOOK ACCOUNT (debt collection matters only)
- 505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506 PIP COVERAGE
- 510 UM or UIM CLAIM (coverage issues only)
- 511 ACTION ON NEGOTIABLE INSTRUMENT
- 512 LEMON LAW
- 801 SUMMARY ACTION
- 802 OPEN PUBLIC RECORDS ACT (summary action)
- 999 OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
- 305 CONSTRUCTION
- 509 EMPLOYMENT (other than CEPA or LAD)
- 599 CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605 PERSONAL INJURY
- 610 AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621 UM or UIM CLAIM (includes bodily injury)
- 699 TORT – OTHER

### Track III - 450 days' discovery
- 005 CIVIL RIGHTS
- 301 CONDEMNATION
- 602 ASSAULT AND BATTERY
- 604 MEDICAL MALPRACTICE
- 606 PRODUCT LIABILITY
- 607 PROFESSIONAL MALPRACTICE
- 608 TOXIC TORT
- 609 DEFAMATION
- 616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617 INVERSE CONDEMNATION
- 618 LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
- 156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303 MT. LAUREL
- 508 COMPLEX COMMERCIAL
- 513 COMPLEX CONSTRUCTION
- 514 INSURANCE FRAUD
- 620 FALSE CLAIMS ACT
- 701 ACTIONS IN LIEU OF PREROGATIVE WRITS

### Multicounty Litigation (Track IV)
- 271 ACCUTANE/ISOTRETINOIN
- 274 RISPERDAL/SEROQUEL/ZYPREXA
- 281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 282 FOSAMAX
- 285 STRYKER TRIDENT HIP IMPLANTS
- 286 LEVAQUIN
- 287 YAZ/YASMIN/OCELLA
- 289 REGLAN
- 290 POMPTON LAKES ENVIRONMENTAL LITIGATION
- 291 PELVIC MESH/GYNECARE
- 292 PELVIC MESH/BARD
- 293 DEPUY ASR HIP IMPLANT LITIGATION
- 295 ALLODERM REGENERATIVE TISSUE MATRIX
- 296 STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS
- 297 MIRENA CONTRACEPTIVE DEVICE
- 299 OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR
- 300 TALC-BASED BODY POWDERS
- 601 ASBESTOS
- 623 PROPECIA
- 624 STRYKER LFIT CoCr V40 FEMORAL HEADS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

**Please check off each applicable category**  ☐ **Putative Class Action**  ☐ **Title 59**

Effective 06/05/2017, CN 10517                                                                 page 2 of 2