# IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TIFFANY MICHALAK | : | |
| | : | Civil Action No. 1:18-cv-1727 |
| Plaintiff | : | |
| v. | : | |
| | : | |
| SERVPRO INDUSTRIES, INC. and | : | |
| O'DONNELL RESTORATION LLC d/b/a | : | |
| SERVPRO OF WOODBURY/DEPTFORD | : | |
| and SCOTT O'DONNELL | : | |
| | : | |
| Defendants | : | |
| | : | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Tiffany Michalak (formerly DiOrio), by and through her attorneys, Mattioni,

Ltd., hereby files this Second Amended Complaint against the defendants, stating as follows:

## PARTIES

1.      Plaintiff Tiffano Michalak is an adult individual who resides at 105 Oriole Drive,

Logan Twp., New Jersey  08085 and is a citizen and resident of the State of New Jersey.

2.      Defendant ServPro Industries, Inc. (hereafter "ServPro") is believed to be a

corporation organized and existing under the laws of the State of Nevada, with its principal place

of business at 801 Industrial Boulevard, Gallatin, Tennessee  37066.

3.      Defendant ServPro is a cleanup and restoration business with franchise locations

across the country.

4.      Defendant O'Donnell Restoration LLC d/b/a ServPro of Woodbury/Deptford

(hereafter "O'Donnell Restoration") is believed to be a Limited Liability Company organized

and existing under the laws of the State of New Jersey, with its principal place of business at 610 Ryan Avenue, in the Borough of Westville, County of Gloucester, New Jersey  08089.

5.      Defendant Scott O'Donnell is an adult individual who is believed to reside at 120 Clearwater Drive, Media, PA  19063 and is believed to be a citizen and resident of the Commonwealth of Pennsylvania.

6.      Upon information and belief, at all times pertinent hereto, defendant O'Donnell was the sole member of defendant O'Donnell Restoration , which was a franchise of defendant ServPro, and he operated the O'Donnell Restoration business at the 610 Ryan Avenue address in Westville, New Jersey.

<u>**JURISDICTION AND VENUE**</u>

7.      This case was originally filed in the Superior Court of New Jersey, Gloucester County, Law Division.

8.      On or about February 7, 2018, defendant ServPro filed a Notice of Removal to this Court pursuant to 28 U.S.C. §1441, based upon diversity of citizenship of the parties.

9.      Pursuant to 28 U.S.C. §1332(a), this Court has jurisdiction over this matter because of diversity of citizenship of the parties.  Plaintiff is a citizen of the State of New Jersey. Defendant ServPro, for diversity jurisdiction purposes, is a citizen of both the State of Nevada (the state where it is incorporated) and the State of Tennessee (the state where its principal place of business is located);  defendant O'Donnell is a citizen of the Commonwealth of Pennsylvania; and defendant O'Donnell Restoration is a citizen of the Commonwealth of Pennsylvania (the state of citizenship of its sole member, defendant O'Donnell).  Thus, there is complete diversity between plaintiff and all of the defendants, since none of the defendants are citizens of the State

2

of New Jersey, the state of citizenship of plaintiff.   In addition, the amount in controversy, without interest and costs, exceeds the sum of $75,000.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because all or a substantial part of the events giving rise to this claim occurred in this District.

## FACTUAL BACKGROUND

11.     Plaintiff was employed by defendant O'Donnell Restoration from December 11, 2014 to December 11, 2015 when she was wrongfully terminated.

12.     While employed with defendant O'Donnell Restoration, plaintiff performed primarily sales and marketing work.  A significant part of her work duties included visiting businesses and attending marketing and networking events.

13.     During plaintiff's tenure with defendant O'Donnell Restoration , defendant had a sexist work culture due to the misogynistic and abusive behavior of defendant O'Donnell. Women were seen as inferior and were treated in a subservient manner and as objects of desire and/or objects of derision rather than equals to men, and defendant O'Donnell would make chauvinistic comments indicating that he felt men were superior to women, including statements such as "men do things better than women," "men are more detail-oriented," and "you women don't know anything about bank accounts or managing money."

14.     Moreover, women were subject to extensive and demeaning verbal abuse by defendant O'Donnell based on their gender.  He would curse at the female employees and scream at them on a regular basis.

15.     While employed by defendant, plaintiff experienced grossly inappropriate, harassing, and cruel treatment and comments toward her, based on her gender, on a regular basis

3

by defendant O'Donnell.  He frequently called plaintiff "dumb" and "stupid," and he often

screamed and cursed at her, making it seem like he felt she did not know how to do her job.

16.     For example, on one occasion, plaintiff brought a customer in to work, and she

entered defendant O'Donnell's office to obtain from him the information the customer needed.

Defendant, for no reason, became livid, yelling at plaintiff, "You need to get the f*** out of here.

Do you think you're the only person who is trying to get the customer's projects done?"  When

plaintiff attempted to explain what she needed, he refused to listen and began screaming at

plaintiff, verbally abusing her in a vicious manner.

17.     Another time, one day after a job fair in October 2015 that plaintiff attended on

behalf of O'Donnell Restoration , defendant O'Donnell was told someone from the job fair had

come in for an appointment they had scheduled with defendant.  On his way to his office, he

crossed paths with plaintiff and began berating her, screaming, "what the f*** do you think

you're doing?  I have to interrupt what I'm doing to interview someone!  Are you stupid?  Are

you f***ing stupid??"

18.     Another time, on or about December 8, 2015, plaintiff went to see defendant

O'Donnell in his office to ask if he might authorize a company donation to a needy family in the

area.  He started yelling, "Are you f***ing kidding me??  Are you stupid??  You're a f***ing

retard!!"  Plaintiff replied that he didn't have the right to speak to her that way, whereupon he

leaned toward her and said, "you know what, why don't you take the rest of the day off and get

the f*** out of here."

19.     Plaintiff was not sure at that point if she still had a job, as she thought defendant

might actually have just fired her.  She went outside and was approached by three female co-

workers who had heard O'Donnell yelling at plaintiff.  They told plaintiff it would be okay, that

defendant was under a lot of pressure because the company was having money issues and no

work coming in.  Plaintiff replied that it did not give him the right to treat her that way.

20.     Plaintiff went back in to speak to defendant O'Donnell, who told his assistant that

he did not want to speak to plaintiff and that from that point on, plaintiff would have to go

through the new Marketing Manager and could not speak to him directly.

21.     The harassment and retaliation plaintiff suffered as a result of defendant's actions

had the foreseeable result of making plaintiff's working conditions intimidating, hostile, and

offensive.

22.     As a result of defendant O'Donnell's harassment and abuse towards her, plaintiff

called defendant ServPro's Human Resources Department at its national headquarters in

Tennessee to formally complain about defendant O'Donnell's misconduct.  In a lengthy

conversation, she informed the HR representative about all of defendant O'Donnell's verbal

abuse, giving an extensive history of his cursing and yelling, and how he had treated her.

23.     ServPro's HR representative seemed sympathetic to plaintiff's complaints, and

advised plaintiff that a full investigation would be performed.   At no time did the HR

representative indicate that the franchisor had no responsibility in, or no involvement with, the

human resources practices of defendant O'Donnell Restoration.  Moreover, at no time did the

HR representative indicate that there were any limits on what could be done by ServPro to

address the situation.

24.     Plaintiff understood from her conversation with defendant ServPro's HR

representative that the corporate ServPro office would take care of the problem posed by

defendant O'Donnell's hostile conduct, and plaintiff relied on the fact that the matter was being

investigated by defendant ServPro.  Had she been informed that the corporate office would not

get involved in a matter involving a franchisee, plaintiff would have taken other action to make her situation better, such as speaking to others who might be able to convince Mr. O'Donnell to calm down toward plaintiff and to act more like an adult and a professional. And, if that did not work, plaintiff would have confronted Mr. O'Donnell directly and told him that she did not deserve to be treated in such manner.

25.     Plaintiff's reliance on the representation of defendant ServPro's HR representative was reasonable under the circumstances, given the fact that she was told by a person with apparent Human Resources authority that the matter would be investigated, in addition to the fact that the corporate ServPro office had a department focused on HR matters, while defendant O'Donnell Restoration did not have an HR department or any employees who worked as Human Relations specialists.

26.     Over the next two days, plaintiff had very little interaction with defendant O'Donnell.

27.     However, on or about December 11, 2015, just days after her report to the HR Department about defendant O'Donnell's harassment, when plaintiff reported to work, she was told that defendant O'Donnell wanted to see her in his office. When she arrived, defendant O'Donnell told her she was being terminated. When plaintiff asked why, defendant O'Donnell told her he wanted to "start new" and that he wanted "a different culture."

28.     Plaintiff was never informed of the results of any investigation that may have been performed by defendants into the allegations of harassment, and, upon information and belief, plaintiff avers that defendants took no meaningful action as a result of her complaints against defendant O'Donnell.

29.     Indeed, upon information and belief, the HR representative or someone else at defendant ServPro's corporate office tipped off defendant O'Donnell about the complaint made by plaintiff, and "buried" the complaint so that a thorough and fair investigation would not be conducted.

30.     Subsequently, after plaintiff applied for and received unemployment compensation benefits, defendant O'Donnell Restoration appealed the State of New Jersey's award of unemployment compensation benefits to plaintiff, falsely reporting that plaintiff was terminated for willful misconduct, which was pretextual and not the real reason for the termination.  This action was taken with the specific intent to harm plaintiff and to try to prevent her from obtaining any income while she was unemployed, in retaliation for her having reported defendant O'Donnell's harassment.

31.     Defendant O'Donnell has, moreover, continued to retaliate against plaintiff since the filing of the present lawsuit.

32.     In late March 2018, defendant O'Donnell took disciplinary action against a current O'Donnell Restoration employee who is still a friend of plaintiff, simply because he was continuing to associate with plaintiff.   By taking such action, defendant O'Donnell was sending a message to the employees that any contact with plaintiff would result in discipline against them.

33.     Defendant's action was in retaliation for plaintiff having reported defendant O'Donnell's harassment and was a purposeful effort on the part of defendant O'Donnell to cause emotional harm to plaintiff by curtailing plaintiff's ability to have meaningful friendships and to reduce her support group.

34.     Then, in or about late May 2018, defendant O'Donnell made contact with multiple restoration companies in the Southern New Jersey area, telling them not to hire plaintiff. This action was taken with the specific intent to harm plaintiff and to try to prevent her from being able to earn an income in the field of her choosing, and was again in retaliation for her having reported defendant O'Donnell's harassment.

35.     As a result of defendants' wrongful conduct, plaintiff has in the past and will continue in the future to suffer severe mental anguish, pain, embarrassment, depression, anxiety, and loss of the enjoyment of life.

36.     As a result of defendants' wrongful conduct, plaintiff has been and will in the future be hindered and prevented from attending to her usual and customary duties and occupations, all to her humiliation, embarrassment, with loss of pleasures and enjoyment of life, and with great financial loss and loss in earning capacity.  In particular, since her termination from defendant's employment, plaintiff was unable to obtain permanent employment comparable to the position and salary she had with defendant.

37.     As a result of defendants' wrongful conduct, plaintiff has been required and will continue to require and undergo medical attention and care and to expend various sums of money and incur various expenses for the injuries and residuals she has suffered, any or all of which may continue for an indefinite period of time in the future.

38.     As a direct result of the aforesaid occurrence, plaintiff has incurred and may hereafter incur other financial expenses and losses.

8

## COUNT ONE
## PLAINTIFF v. DEFENDANT O'DONNELL RESTORATION LLC
### d/b/a   SERVPRO OF WOODBURY/DEPTFORD
### GENDER DISCRIMINATION

39.     Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 38 above as if fully set forth herein.

40.     Defendant O'Donnell Restoration's employees, including defendant O'Donnell, maintained a sexist work environment and culture at the Westville location where plaintiff worked, as women were treated as objects of desire and/or targets to be denigrated, rather than as professionals.

41.     The terms and conditions of employment for female employees of defendant O'Donnell Restoration were far less favorable than for male employees, and included verbal abuse, cursing, yelling, and derogatory slurs, behaviors that were persistent and continuing throughout plaintiff's employment and therefore constituted a continuing violation of plaintiff's rights.

42.     Ultimately, the agents, managers, and supervisors of defendant O'Donnell Restoration wrongfully terminated plaintiff's employment and then wrongfully appealed the award of unemployment compensation benefits to her.

43.     Male employees were treated much more favorably then female workers, as they were not subject to the extreme abuse and harassment by defendant O'Donnell.  In addition, male employees were treated more leniently for infractions of company rules, such as attendance and lateness policies, as well as for resisting and speaking up about O'Donnell's misconduct.

44.     Agents, managers, and supervisors of defendant O'Donnell Restoration were aware of the discriminatory treatment against women but failed to properly investigate, address

9

or mitigate the employees' behavior.  This failure effectively condoned the gender discrimination.

45.     Defendant O'Donnell Restoration should have prevented the ongoing inappropriate actions taken by its employees.

46.     Defendant O'Donnell Restoration's employees' conduct toward plaintiff was due to her gender.  Similarly situated male employees were not treated in the same manner as plaintiff.

47.     The above acts and failures to act constitute discrimination against plaintiff on the basis of her gender, in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq*.

48.     Any proffered non-discriminatory reason for defendant's gender discrimination is illegitimate and a mere pretext.

49.     As a direct and proximate result of defendant's conduct, plaintiff has suffered extensive financial loss, emotional injuries, physical ailments, and other damages as described above.

50.     Defendant's conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff.  This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering defendant subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

## COUNT TWO
## PLAINTIFF v. DEFENDANT SERVPRO INDUSTRIES, INC.
## <u>GENDER DISCRIMINATION</u>

51.      Plaintiff realleges and incorporates by reference the averments contained in
Paragraphs 1 through 50 above as if fully set forth herein.

52.      At all times pertinent hereto, defendant ServPro exercised substantial control over
defendant O'Donnell Restoration's operations, so as to make defendant ServPro liable for the
acts or omissions of defendant O'Donnell Restoration's employees.

53.      Upon information and belief, in addition to the grant of its trademark and business
logo and other insignia required to be used by defendant O'Donnell Restoration, defendant
ServPro developed, adapted and adopted various cleaning/restoration skills, concepts, business
techniques and marketing systems and developed a method and specialized process with
standards, specifications, methods, policies and procedures that defendant O'Donnell Restoration
was required to use in its business of residential and commercial cleaning and restoration.

54.      Upon information and belief, defendant ServPro required defendant O'Donnell
Restoration to operate its franchise in strict conformity with the methods, standards, and policies
and procedures issued by defendant ServPro.

55.      Moreover, upon information and belief, defendant ServPro had the ability to
modify the methods or services or products offered as part of the ServPro operation, and
defendant O'Donnell was required to comply with any such modifications.  However, if
defendant O'Donnell desired to make any modifications to the methods or services or products
offered as part of its operation to its customers, defendant O'Donnell was not authorized to make
any such modifications without first obtaining defendant ServPro's express permission to do so,

11

and then only if defendant ServPro determined that such modifications were beneficial to all

franchisees and made part of defendant ServPro's overall business model.

56.    Defendant O'Donnell Restoration even needed defendant ServPro's prior

approval for the type of cleaning products, supplies, equipment, job invoice forms, computer

programs, and office forms that it wished to use.

57.    Defendant ServPro issued manuals, training materials and/or other writings

setting forth the methods, standards, specifications, policies and procedures that it required

defendant O'Donnell Restoration to follow.  Such manuals, training materials and/or other

writings specifically included documentation containing the methods, standards, specifications,

policies and procedures for management and operation of a ServPro franchise, such as defendant

O'Donnell Restoration's business.

58.    Defendant ServPro designated certain training that defendant O'Donnell

Restoration was required to attend and complete, to defendant ServPro's satisfaction.

59.    All of defendant O'Donnell Restoration's proposed advertising and promotional

material needed to be submitted, along with a description of its intended use, for defendant

ServPro's prior approval.

60.    Upon information and belief, defendant ServPro established strict standard

operating procedures required to be followed by defendant O'Donnell Restoration in its

accounting practices, and defendant ServPro, upon information and belief, further specified the

type of computer hardware and software, as well as certain Charts of Accounts, books, data, and

reports to be used by defendant O'Donnell Restoration with regard to its accounting practices.

61.    Upon information and belief, at all times pertinent hereto, defendant ServPro

implemented the Human Resources policies and procedures required to be followed by defendant

O'Donnell Restoration and exerted the right to control defendant O'Donnell Restoration's employment and personnel practices, including the training and discipline of defendant O'Donnell Restoration's employees and defendant O'Donnell Restoration's hiring and firing decisions.

62.     As such, defendant ServPro and defendant O'Donnell Restoration were joint employers and thus may share in liability for gender discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq*.

63.     Moreover, defendant ServPro accordingly has exercised sufficient control over defendant O'Donnell Restoration's operations such that defendant ServPro is vicariously liable to plaintiff for defendant O'Donnell Restoration's discrimination against plaintiff on the basis of her gender.

64.     In addition, or in the alternative, defendant O'Donnell Restoration acted as an agent of defendant ServPro, with actual or apparent authority over defendant O'Donnell Restoration's human resources and personnel practices and decisions, and defendant ServPro is therefore liable to plaintiff for the gender discrimination she suffered at the hands of defendant O'Donnell Restoration.

65.     By virtue of the ServPro HR representative taking plaintiff's history and information as to the abuse and harassment she suffered at the hands of defendant O'Donnell, and by telling plaintiff that her complaint would be investigated, defendant ServPro created the appearance of authority over defendant O'Donnell Restoration's personnel issues.

66.     Plaintiff relied upon the statement by the ServPro HR representative that her complaint would be investigated, and refrained from taking further action herself while such investigation was allegedly being conducted.

67.     Plaintiff's reliance on the representation of the ServPro HR representative was reasonable under the circumstances, given the franchisor's apparent oversight over the franchisee's operations, the lack of an HR department or HR representative at O'Donnell Restoration, and the fact that the ServPro HR representative indicated that the problem would be addressed, without ever saying there were limits on what could be done by the franchisor.

68.     In addition, or in the alternative, defendant ServPro was negligent in its oversight of defendant O'Donnell Restoration's human resources practices and management and in failing to provide proper policies and procedures for its franchisee, and enforcing same, with regard to workplace conduct, non-harassing and non-discriminatory treatment of employees, investigation of harassment and discrimination complaints, and proper review and checks and balances on the authority to terminate employees.

69.     Any proffered non-discriminatory reason for defendant's gender discrimination is illegitimate and a mere pretext.

70.     As a direct and proximate result of defendants' conduct, plaintiff has suffered extensive financial loss, emotional injuries, physical ailments, and other damages as described above.

71.     Defendant's conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff.  This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering defendant subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

## COUNT THREE
### PLAINTIFF v. DEFENDANT O'DONNELL RESTORATION LLC
### d/b/a   SERVPRO OF WOODBURY/DEPTFORD
### HOSTILE WORK ENVIRONMENT HARASSMENT

72.     Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 71 above as if fully set forth herein.

73.     The inappropriate and unwelcomed behavior of defendant O'Donnell Restoration's employees, including defendant O'Donnell, was severe and pervasive, altering the terms and conditions of plaintiff's employment and creating an abusive and hostile work environment for plaintiff, which persisted and continued throughout plaintiff's employment with defendant O'Donnell Restoration.

74.     The abusive work environment was hostile to plaintiff and would also be recognized as hostile by reasonable persons in her position.

75.     As a result of the harassment, plaintiff suffered emotional distress and injury, as well as financial damages.

76.     The harassment and hostile work environment was directed against plaintiff because of her gender.  Similarly situated male employees were not treated in the same manner as plaintiff.

77.     Agents, managers, and supervisors of defendant O'Donnell Restoration were aware of the repeated harassment but failed to properly investigate, address or mitigate the employees' behavior.  This failure effectively condoned the sexual harassment and the hostile work environment created as a result.

15

78.     Defendant O'Donnell Restoration should have prevented the inappropriate actions taken by its employees, which were an ongoing and continuing violation of plaintiff's rights.

79.     Despite repeated complaints by plaintiff of the unwanted conduct, defendants' agents, managers, and supervisors failed to conduct a fair and unbiased investigation of plaintiff's allegations.

80.     In addition, as a result of the complaints, defendants' agents, managers, and supervisors failed to take appropriate measures to mitigate the actions against plaintiff, but instead harassed and retaliated against her further, thus exacerbating the hostile work environment.

81.     The above acts and failures to act constitute a hostile work environment based on plaintiff's gender, in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq.*

82.     Any proffered non-discriminatory reason for defendants' creation of a hostile work environment is illegitimate and a mere pretext.

83.     As a direct and proximate result of defendants' conduct, plaintiff has suffered extensive financial loss, emotional injuries, physical ailments, and other damages as described above.

84.     Defendant's conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff.  This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering defendant subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

### COUNT FOUR
### PLAINTIFF v. DEFENDANT SERVPRO INDUSTRIES, INC.
### HOSTILE WORK ENVIRONMENT HARASSMENT

85.     Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 84 above as if fully set forth herein.

86.     At all times pertinent hereto, as shown above, defendant ServPro exercised substantial control over defendant O'Donnell Restoration's operations, so as to make defendant ServPro liable for the acts or omissions of defendant O'Donnell Restoration's employees.

87.     In light of defendant ServPro's control over defendant O'Donnell Restoration's operations, including the training and discipline of defendant O'Donnell Restoration's employees and defendant O'Donnell Restoration's hiring and firing decisions, defendant ServPro and defendant O'Donnell Restoration were joint employers and thus may share in liability for hostile work environment harassment in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq.*

88.     Defendant ServPro is therefore vicariously liable to plaintiff for defendant O'Donnell Restoration's creation and allowance of a hostile work environment toward plaintiff on the basis of her gender.

89.     In addition, or in the alternative, defendant O'Donnell Restoration acted as an agent of defendant ServPro, with actual or apparent authority over defendant O'Donnell Restoration's HR practices, and defendant ServPro is therefore liable to plaintiff for the hostile work environment created and permitted by defendant O'Donnell Restoration.

90.     Plaintiff relied upon the statement by the ServPro HR representative that her complaint would be investigated, and refrained from taking further action herself while such investigation was allegedly being conducted.

91.     Plaintiff's reliance on the representation of the ServPro HR representative was reasonable under the circumstances, given the franchisor's apparent oversight over the franchisee's operations, the lack of an HR department or HR representative at O'Donnell Restoration, and the fact that the ServPro HR representative indicated that the problem would be addressed, without ever saying there were limits on what could be done by the franchisor.

92.     In addition, or in the alternative, defendant ServPro was negligent in its oversight of defendant O'Donnell Restoration's human resources practices and management and in failing to provide proper policies and procedures for its franchisee, and enforcing same, with regard to workplace conduct, non-harassing and non-discriminatory treatment of employees, investigation of harassment and discrimination complaints, and proper review and checks and balances on the authority to terminate employees.

93.     Any proffered non-discriminatory reason for defendant's creation and allowance of a hostile work environment is illegitimate and a mere pretext.

94.     As a direct and proximate result of defendants' conduct, plaintiff has suffered extensive financial loss, emotional injuries, physical ailments, and other damages as described above.

95.     Defendants' conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff.  This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering

defendant subject to the assessment of punitive or exemplary damages in addition to the

assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the

full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and

such further relief as may be appropriate.

**COUNT FIVE**
**PLAINTIFF v. ALL DEFENDANTS**
**<u>RETALIATION</u>**

96.     Plaintiff realleges and incorporates by reference the averments contained in

Paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97.     After plaintiff complained of harassment, her employment was, within days,

terminated by defendants.   This termination constituted unlawful retaliation for her having

reported defendant O'Donnell's harassment, in violation of the New Jersey Law Against

Discrimination, N.J.S.A. §10:5-1, *et seq.*

98.     Defendants also illegally retaliated against plaintiff by failing to address her

complaints and failing to conduct a proper investigation, appealing her award of unemployment

compensation benefits, and contending that plaintiff had been fired due to attendance reasons,

which was not the true reason for the termination.

99.     Subsequent to the filing of the present lawsuit, defendants O'Donnell and

O'Donnell Restoration further retaliated against plaintiff by disciplining an O'Donnell

Restoration employee because he remained on friendly terms with plaintiff.

100.     Subsequent to the filing of the present lawsuit, defendants O'Donnell and

O'Donnell Restoration further retaliated against plaintiff by telling various restoration companies

in the South Jersey area that they should not hire plaintiff.

19

101.    Any proffered non-discriminatory reason for defendants' retaliation against plaintiff is illegitimate and a mere pretext.

102.    As a direct and proximate result of defendant's conduct, plaintiff has suffered extensive financial loss, emotional injuries, physical ailments, and other damages as described above.

103.    Defendants' conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff.  This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering defendants subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

## COUNT SIX
## PLAINTIFF v. DEFENDANT SCOTT O'DONNELL
## AIDING AND ABETTING THE COMMISSION OF DISCRIMINATORY ACTS

104.    Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 103 of this Complaint as if fully set forth herein.

105.    When he committed his abusive and hostile acts toward plaintiff, defendant O'Donnell knew his conduct, on behalf of defendants O'Donnell Restoration and ServPro, violated anti-discrimination and anti-harassment laws.

106.    Defendant O'Donnell's abusive and hostile actions thus constitute aiding and abetting of defendant O'Donnell Restoration and defendant ServPro's discriminatory conduct

toward plaintiff and creation of a hostile work environment for her, in violation of the New

Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq*.

107.    Any proffered non-discriminatory reason for defendants' aiding and abetting of

discriminatory acts is illegitimate and a mere pretext.

108.    As a direct and proximate result of defendants' conduct, plaintiff has suffered

extensive financial losses, emotional injuries, physical ailments, and other damages as described

above.

109.    Defendant's conduct was willful, wanton, reckless and in total disregard for the

rights and welfare of plaintiff.  This conduct was egregious and outrageous, and in reckless

disregard for plaintiff's safety, well-being, and physical and emotional health, rendering

defendant subject to the assessment of punitive or exemplary damages in addition to the

assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants for the

full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and

such further relief as may be appropriate.

### COUNT SEVEN
### PLAINTIFF v. DEFENDANT SERVPRO INDUSTRIES, INC.
### AIDING AND ABETTING THE COMMISSION OF DISCRIMINATORY ACTS

110.    Plaintiff realleges and incorporates by reference the averments contained in

Paragraphs 1 through 109 of this Complaint as if fully set forth herein.

111.    Plaintiff specifically informed defendant ServPro's HR representative of the

extensive harassment and hostile acts she suffered from defendants O'Donnell and O'Donnell

Restoration.

112.    When defendant ServPro's HR representative heard the description of the history of abuse and information from plaintiff, she knew that the conduct of defendants O'Donnell and O'Donnell Restoration violated anti-discrimination and anti-harassment laws.

113.    Yet, despite the ability to intervene, defendant ServPro took no action to assist plaintiff and allowed further discrimination, harassment, and retaliation against her to occur.

114.    Defendant ServPro's actions thus constitute aiding and abetting of defendants O'Donnell and O'Donnell Restoration's discriminatory conduct toward plaintiff and creation of a hostile work environment for her, and retaliation against her, in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq.*

115.    Any proffered non-discriminatory reason for defendant ServPro's aiding and abetting of discriminatory acts is illegitimate and a mere pretext.

116.    As a direct and proximate result of defendants' conduct, plaintiff has suffered extensive financial losses, emotional injuries, physical ailments, and other damages as described above.

117.    Defendant's conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff.  This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering defendant subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendant for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

**COUNT EIGHT**
**PLAINTIFF v. DEFENDANT SERVPRO INDUSTRIES, INC.**
<u>NEGLIGENCE</u>

118.    Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 117 of this Complaint as if fully set forth herein.

119.    By virtue of its oversight of defendant O'Donnell Restoration's operations, defendant ServPro, at all times pertinent hereto, owed a duty to plaintiff and other employees of defendant O'Donnell Restoration, to ensure that they were not treated in an unfair and discriminatory manner by the franchisee.

120.    Defendant Servpro breached the duty owed to plaintiff, as she was subjected to harassment, termination, and retaliation at the hands of defendants O'Donnell and O'Donnell Restoration.

121.    In the alternative, even if defendant ServPro did not owe any legal duty at the outset to ensure that employees of defendant O'Donnell Restoration were not treated in a discriminatory and harassing manner, or to ensure that said employees were not subject to retaliation after reporting discrimination and harassment, defendant ServPro, once it engaged in action, through its HR representative accepting plaintiff's report of complaints against defendant O'Donnell and O'Donnell Restoration and advising her that the matter would be investigated, owed a duty to perform its investigation and corrective measures in a non-negligent manner.

122.    Plaintiff relied upon the statement by the ServPro HR representative that her complaint would be investigated, and refrained from taking further action herself while such investigation was allegedly being conducted.

123.    Upon information and belief, defendant ServPro's HR representative or someone else at defendant ServPro's corporate office tipped off defendant O'Donnell about the complaint

made by plaintiff, and "buried" the complaint so that a thorough and fair investigation would not be conducted.

124.    Defendant ServPro either failed to perform an investigation altogether or performed an inadequate, biased investigation that failed to disclose the discrimination and harassment suffered by plaintiff.

125.    Defendant ServPro, upon information and belief, took no disciplinary action against defendants O'Donnell and O'Donnell Restoration, and failed to take any of the corrective measures that would have been proper and appropriate.

126.    Defendant ServPro's failure to properly investigate plaintiff's complaints increased the risk of harm suffered by plaintiff.

127.    As a direct and proximate result of defendant's conduct, plaintiff has suffered extensive financial losses, emotional injuries, physical ailments, and other damages as described above.

128.    Defendant's conduct was willful, wanton, reckless and in total disregard for the rights and welfare of plaintiff.  This conduct was egregious and outrageous, and in reckless disregard for plaintiff's safety, well-being, and physical and emotional health, rendering defendant subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendant for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

**COUNT NINE**
**PLAINTIFF v. DEFENDANTS SCOTT O'DONNELL AND**
**O'DONNELL RESTORATION LLC d/b/a SERVPRO OF WOODBURY/DEPTFORD**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

129.   Plaintiff realleges and incorporates by reference the averments contained in Paragraphs 1 through 128 of this Complaint as if fully set forth herein.

130.   By their actions, defendants O'Donnell and O'Donnell Restoration intended to and in fact did cause plaintiff substantial emotional distress.

131.   The conduct of defendants was outrageous and inappropriate.  The harassment directed at plaintiff and subsequent conduct of defendants, including the termination of plaintiff's employment based on false grounds and post-lawsuit ostracizing of plaintiff and contacting potential employers in an obvious attempt to prevent her from obtaining other employment, was well beyond all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community.

132.   As a direct and proximate result of defendants' actions, plaintiff suffered injuries and damages as described above.

133.   Defendants' conduct was willful, wanton, reckless and in total disregard for the health and safety of plaintiff.  This conduct was egregious and outrageous, rendering defendants subject to the assessment of punitive or exemplary damages in addition to the assessment of substantial compensatory damages for the harm caused to plaintiff.

WHEREFORE, plaintiff demands judgment in her favor and against defendants jointly and/or severally for the full extent of her damages, together with interest, costs, attorney's fees, punitive damages, and such further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all Counts of the within Complaint.

MATTIONI, LTD.

Dated: <u>February 8, 2019</u>      BY:   <u>/s/ Joseph F. Bouvier     </u>
JOSEPH F. BOUVIER, ESQUIRE
1316 Kings Highway
Swedesboro, NJ  08085
Phone: (856) 241-9779
Fax: (856) 241-9989
Email: jbouvier@mattioni.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, Joseph F. Bouvier, Esquire, hereby certify that the foregoing Second Amended Complaint was served on this date upon counsel of all record via the Court's electronic filing system.


                                          /s/ Joseph F. Bouvier
                                          JOSEPH F. BOUVIER


Dated: February 8, 2019