NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TIFFANY MICHALAK, <br><br> Plaintiff, <br><br> v. <br><br> SERVPRO INDUSTRIES, INC. and O'DONNELL RESTORATION LLC d/b/a SERVPRO OF WOODBURY/DEPTFORD and SCOTT O'DONNELL, <br><br> Defendants. | Civil Action No. 18-01727 (RBK-KMW) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on Defendant ServPro Industries, Inc.'s ("ServPro") Motion to Dismiss [Doc. No. 25] Plaintiff Tiffany Michalak's ("Plaintiff") Amended Complaint. Amended Complaint ("Am. Compl.") [Doc. No. 24]. Plaintiff alleges that ServPro violated the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.*, and was negligent in failing to properly investigate Plaintiff's report of workplace discrimination. ServPro now seeks dismissal of Plaintiff's claims of gender discrimination (Count II), hostile work environment (Count IV); retaliation (Count V); aiding and abetting discriminatory acts (Count VII); and negligence (Count VIII). For the reasons set forth in the Opinion below, Defendant's motion to dismiss is **DENIED**.

## I.    FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

This is a case involving allegations of workplace discrimination and harassment. Tiffany Michalak ("Plaintiff") worked for Defendant O'Donnell Restoration, a franchisee of Defendant ServPro Industries ("ServPro"), for one year until her termination. During that time, she claims Manager Scott O'Donnell ("Mr. O'Donnell") sexually harassed her and subjected her to discrimination based on her sex. She reported these instances to an HR representative at ServPro's national headquarters. That representative allegedly promised to investigate the matter, but just two days later, Mr. O'Donnell terminated Plaintiff. Mr. O'Donnell allegedly told perspective employers not to hire Plaintiff. He also misrepresented Plaintiff's termination in order to later rescind her unemployment benefits. The motion presently before the Court turns largely on ServPro's relationship with Mr. O'Donnell and O'Donnell Restoration.

❖

Plaintiff first began working for O'Donnell Restoration on December 11, 2014. Amended Complaint ("Am. Compl.") [Doc. No. 24] at ¶ 11. She worked predominately in sales and marketing, but a significant part of her duties included visiting businesses and attending networking events. *Id.* at ¶ 11. For the next year, Plaintiff encountered several instances of harassment and sexual discrimination. She alleges, "Women were seen as inferior and were treated in a subservient manner and as objects of desire and/or objects of derision. . ." *Id.* at ¶ 13. Specifically, she describes several statements directed towards her that highlight this culture of discrimination. These include, "men do things better than women," "men are more detail-orientated," and "you women don't know anything about bank accounts or managing." *Id.*

---

[1] On this motion to dismiss, the Court accepts as true the well-pleaded facts in the Amended Complaint and construes them in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Mr. O'Donnell also targeted Plaintiff on numerous occasions. Plaintiff describes three instances. In the first, Plaintiff alleges that during a routine client visit, Mr. O'Donnell yelled at her, "You need to get the f*** out of here. Do you think you're the only person who is trying to get the customer's projects done?" *Id.* at ¶ 16. In a second instance, Defendant O'Donnell berated her, "[W]hat the f*** do you think you're doing. . . . Are you stupid? Are you f***ing stupid?" *Id.* at ¶ 17. Next, in a third instance, O'Donnell yelled at her again, "Are you f***ing kidding me? Are you stupid? You're a f***ing retard!" *Id.* at ¶ 18. He then told her to "take the rest of the day off and get the f*** out of here." *Id.* Following this third instance, Plaintiff did not know whether she remained employed at O'Donnell Restoration. *Id.* at ¶ 19. She therefore asked to speak with Mr. O'Donnell, who had informed his assistant that he did not want to speak with Plaintiff. *Id.* at ¶ 20. Plaintiff then learned that she was no longer permitted to speak with Mr. O'Donnell directly; if she needed to speak with him, she would have to communicate first with the new marketing manager. *Id.* at ¶ 21.

On or about December 9, 2015, the day after the third incident, Plaintiff contacted ServPro and reported Mr. O'Donnell's harassment. She spoke with an HR representative at ServPro's national headquarters. *Id.* at ¶ 22. Plaintiff describes a "lengthy conversation," where she informed the HR representative "about all of defendant O'Donnell's verbal abuse, giving an extensive history of his cursing and yelling, and how he had treated her." *Id.* The HR representative then advised Plaintiff that "a full investigation would be performed." *Id.* at ¶ 23. Plaintiff took no other action and believed ServPro would thoroughly investigate.

Just two days after Plaintiff called ServPro, Mr. O'Donnell terminated Plaintiff on December 11, 2015. *Id.* at ¶ 27. During the final termination meeting, Mr. O'Donnell explained that he wanted to "start new" and wanted "a different culture." *Id.* at ¶ 27. Plaintiff later applied

for and received unemployment compensation benefits. *Id.* at ¶ 30. Sometime thereafter, O'Donnell Restoration appealed the state award of benefits. *Id.*

Plaintiff alleges that Defendants falsely reported that she had been "terminated for willful misconduct." *Id.* Sometime after her firing, Plaintiff also learned that Mr. O'Donnell "took disciplinary action against a current O'Donnell Restoration employee who is still a friend of Plaintiff, simply because he was continuing to associate with Plaintiff." *Id.* at ¶ 32.

On December 5, 2017, Plaintiff filed a complaint against ServPro, O'Donnell Restoration, and Mr. O'Donnell in New Jersey state court. Complaint [Doc. No. 1]. Defendants then removed the action to this Court on February 7, 2018, and Plaintiff subsequently amended her complaint. *See* Am. Compl.. The Amended Complaint alleges nine causes of action. Count I and II claim Defendants O'Donnell Restoration, Scott O'Donnell and ServPro engaged in gender discrimination. Count III and IV claim Defendants created a hostile work environment. Next, Count V claims that Defendants retaliated against Plaintiff. Counts VI and VII bring related claims for aiding and abetting the commission of a discriminatory act. Count VIII alleges negligence against ServPro. Finally, Count IX charges O'Donnell Restoration and Scott O'Donnell with intentionally inflicting emotional distress upon Plaintiff.

In relevant part, the Amended Complaint focuses on the relationship between ServPro and defendant O'Donnell Restoration. Plaintiff alleges that ServPro "exercised substantial control" over O'Donnell Restoration and demanded "strict conformity" to various methods and procedures. *Id.* at ¶¶ 52, 54. Specifically, ServPro granted O'Donnell use of its trademark and business logo. *Id.* at ¶ 53. O'Donnell Restoration also developed and used various cleaning and restoration skills and concepts, as well as other "business techniques and marketing systems." *Id.* Further, Plaintiff argues that ServPro required O'Donnell Restoration to use "standards,

specifications, methods, policies and procedures" in its "business of residential and commercial cleaning and restoration." *Id.* at ⁋ 54. ServPro also provided training materials which included other mandatory procedures for O'Donnell Restoration to follow. *Id.* at ⁋ 57.

Defendant ServPro now moves to dismiss five of Plaintiff's claims. Def.'s Motion to Dismiss ("Def.'s Mot.) [Doc. No. 25]. These include four violations of the New Jersey Law Against Discrimination ("NJLAD"). Specifically, ServPro seeks to dismiss claims of gender discrimination (Count II); hostile work environment (Count IV); retaliation (Count V); and aiding and abetting discriminatory acts (Count VII). ServPro also moves to dismiss Plaintiff's claim of common law negligence (Count VIII).

In evaluating ServPro's motion, the Court must consider ServPro's relationship with O'Donnell Restoration. In relevant part, ServPro argues that Plaintiff cannot establish an employment relationship, jointly or otherwise. Def. Mot. at 7. ServPro also argues that it cannot be vicariously liable for Mr.O'Donnell's conduct because it did not control O'Donnell Restoration in any meaningful way. Finally, ServPro accuses Plaintiff of misrelying on ServPro and O'Donnell Restoration's franchisor-franchisee relationship, which is distinct from the employment relationship at issue. The Court considers these arguments in turn.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### III. DISCUSSION

In the Amended Complaint, Plaintiff alleges that ServPro violated NJLAD by engaging in gender discrimination (Count II), hostile work environment (Count IV), retaliation (Count V), and aiding and abetting discriminatory acts (Count VII). Plaintiff also brings a claim of common law negligence (Count VIII). To support these claims, Plaintiff asserts alternative theories of joint employer liability, vicarious liability, and agency liability. Defendant ServPro, however, challenges this relationship and argues that Plaintiff cannot establish an employment

relationship, jointly or otherwise. Def. Mot. at 7. Because Defendant's motion focuses almost entirely on this relationship, the existence of an employment relationship under *any* theory is sufficient for Plaintiff's claims to survive at this stage in the litigation. *See Twombly*, 550 U.S. at 549 (explaining that "at a motion to dismiss stage, a judge assumes that all the allegations in the complaint are true (even if doubtful in fact)") (internal citation omitted).

### 1. Whether Plaintiff alleges the existence of an agency relationship

Plaintiff claims an agency relationship existed between Defendant ServPro and Defendant O'Donnell Restoration. Specifically, Plaintiff claims the existence of both actual and apparent authority. Defendant ServPro, however, argues that no agency relationship existed because ServPro did not exercise control over the day-to-day operations of O'Donnell Restoration. The issue is therefore whether the facts in the complaint allege that ServPro exercised sufficient control over the day-to-day operations of O'Donnell Restoration to establish an agency relationship.

An agency relationship exists where one party (the principal) manifests assent to another party (the agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent. Restatement (Third) of Agency § 1.01 (2006). The hallmark of an agency relationship is that the principal has the right to control the manner in which the agent performs his duties. *Drexel v. Union Prescription Venters, Inc.*, 582 F. 2d 781, 785 (3d Cir. 1978). In the franchise context, this means that the franchisor is able to exercise control over *the day-to-day operations* of the franchise. *See J.M.L. ex rel. T.G.*, 379 N.J. Super at 151 (finding no agency relationship where franchisor did not exercise control over day-to-day operations of the franchise) (emphasis added).

Here, Plaintiff presents several facts to support the existence of an agency relationship. Specifically, Plaintiff alleges that ServPro "issued manuals, training materials and/or other writings setting forth the methods, standards, specifications, policies and procedures that it required defendant O'Donnell Restoration to follow." Am. Compl. at ¶ 57. This material included documentation and other specific writings that contained "methods, standards, specifications, policies and procedures for management and operation of a ServPro franchise. . ." *Id.* Furthermore, ServPro designated certain trainings as mandatory for defendant O'Donnell Restoration." *Id.* at ¶ 58. These trainings included employment and personnel practices, "including the training and discipline of Defendant O'Donnell Restoration's employees and defendant O'Donnell Restoration's hiring and firing decisions." *Id.* at ¶ 61.

In viewing these facts in the light most favorably to Plaintiff, the Court finds that the allegations support a showing that ServPro had actual authority over O'Donnell Restoration. Again, ServPro's manuals and policies outlined specific methods and practices for O'Donnell Restoration. The Amended Complaint makes clear that these policies were both mandatory and related to employee training and discipline. Further, Judge Walls considered similar manuals and policies in *eTeam, Inc.* and found, "Facts like these suggest that [the franchisor] either was exercising, or reserved the right to exercise, a fairly extensive degree of control over day-to-day operations at the [fanchise's business]." *eTeam, Inc. v. Hilton Woldwise Holdings, Inc*, No. 15-5057, 2017 WL 2539395, at *3 (D.N.J. June, 12, 2017). This Court agrees and finds that Plaintiff has alleged facts to suggest ServPro did control the day-to-day operations of O'Donnell Restoration to support an agency relationship.

Relatedly, the Court finds Defendant's counterargument both untimely and unpersuasive. ServPro suggests that Plaintiff's allegations merely show instances of control that is typical of

any franchisor-franchisee relationship. *See e.g. Capriglione v. Radisson Hotels Int'l, Inc.*, 2011 WL 4736310 (D.N.J. Oct. 5, 2011) (explaining the right to ensure brand quality and consistency does not usually give rise to a finding of vicarious liability); *see also J.M.L. v. A.M.P.*, 379 N.J. Super. 142 (App. Div. 2005) (discussing the importance of brand consistency for a franchisor). Defendant's argument, however, only holds water in those few instances of traditional franchisor control. Such generic discussions of "practices and procedures" include O'Donnell's use of the trademark and other licensing concerns relating to the franchisor's "brand." *See D'Annunzio*, 192 N.J. at 125 (discussing the importance of day-to-day control in the *Pukowsky* first factor). But this level of generalized control is distinct from many of Plaintiff's allegations which state that ServPro provided O'Donnell Restoration with mandatory training, written policies, and personnel manuals. Plaintiff here appears to allege far more control than standard franchise obligations. ServPro appears to have had substantial control in O'Donnell Restoration's management of employees. The Court therefore rejects Defendant's argument and **DENIES** the motion to dismiss Counts II, IV, and V. In doing so, however, the Court notes that Defendant may reassert these arguments at the summary judgment stage.[2]

The Court similarly rejects Defendant's argument to dismiss Plaintiff's negligence claim (Count VIII). Again, the facts, taken in the light most favorably to the Plaintiff, sufficiently allege the existence of a duty of care because ServPro exercised substantial control over the day-to-day operations of O'Donnell Restoration. *See Strachan v. John F. Kennedy Memorial Hosp.*, 109 N.J. 523, 538 (N.J. 1988) (explaining "the prerequisite to recover on a negligence theory is a duty owed by defendant to plaintiff"). While the Court has discussed Plaintiff's pleading of

---

[2] Because the Court has found that Plaintiff has alleged facts to show an agency relationship under a theory of apparent authority, the Court declines to make any judgment as to ServPro's relationship with O'Donnell under various other theories discussed in the papers.

actual authority, the facts also seem to support the existence of a duty to care based upon a showing of apparent authority as well.

The law on apparent authority is clear. A franchisor may be vicariously liable under apparent authority doctrine. In order to recover against a franchisor under the principle of apparent authority, a party must show that: (1) the appearance of authority has been created by the conduct of the alleged franchisor and not solely by the conduct of the putative agent; (2) a third party has relied on the franchisor's apparent authority to act for a franchisee; and (3) the reliance was reasonable under the circumstances. *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 374 (D.N.J. 2004); *see also Gizzi v. Texaco*, 437 F.2d 308, 309 (3d Cir. 1971).

Here, Plaintiff has sufficiently alleged facts to satisfy the test for apparent authority. Most obviously, Plaintiff claims that the HR representative stated ServPro would investigate the matter. Plaintiff claims she relied on this promise and did not take any additional actions in the intervening period from the report to her termination. For example, "if she had been informed the corporate office could not do anything to help her, she would have taken different action, by either asking someone to talk to defendant O'Donnell to convince him to treat her more professionally or by confronting him directly and telling him she did not deserve to be treated so poorly." Am Compl. at ¶ 24. The Court finds this to be sufficient to satisfy the pleading requirements of apparent authority. Further, Defendant does not offer any case or argument to undercut that this reliance was somehow unreasonable. The Court therefore finds sufficient allegations that ServPro owed a duty of care and thus **DENIES** Defendant's motion to dismiss Count VIII.

**2. Whether Plaintiff states a claim for aiding and abetting**

Plaintiff next brings a claim for aiding and abetting the commission of discriminatory acts (Count VII). Plaintiff claims she informed defendant ServPro's HR representative of various instances of harassment within O'Donnell Restoration. Am. Compl. ¶ 111. ServPro had the ability to intervene yet took no action to assist Plaintiff. *Id*. at ¶ 113. Further, ServPro allegedly "tipped off" O'Donnell Restoration and "buried" Plaintiff's complaint. *Id.* at ¶ 123. These actions permitted additional discrimination, harassment, and retaliation to occur. Specifically, Mr. O'Donnell terminated her employment and misrepresented her termination to future employers. O'Donnell Restoration also maliciously attempted to appeal Plaintiff's unemployment compensation based upon Mr. O'Donnell's false reporting of Plaintiff's termination. As such, Plaintiff alleges ServPro aided and abetted in the commission of discriminatory acts. Defendant, however, challenges these allegations as "nothing more than a formulaic 'he-harmed me' recitation of the cause of action elements supported by conclusory statements." Def. Mot. at 32.

Under the NJLAD it is unlawful for any person, even if not an employer under the NJLAD definition, "to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the LAD] . . . ." N.J.S.A. 10:5–12(e); *see also J.M.L.*, 877 A.2d at 296. An individual or entity aids or abets an act forbidden under the NJLAD when knowingly giving substantial assistance to the principal violator. *Tarr v. Ciasulli*, 181 N.J. 70, 84 (N.J. 2004). The test for substantial assistance requires the Court to consider five facts: (1) the nature of the act encouraged; (2) the amount of assistance given by the [abettor]; (3) whether the [abettor] was present at the time of the asserted harassment; (4) the [abettor's] relations to the others; and (5) the state of mind of the [abettor]. *Id*. Further, "in the context of failure to act, [individual liability] 'requires active and purposeful conduct." *Randall v. Rutgers, State University of New*

*Jersey*, No. 13-cv-7354, 204 WL 6386814, at *5 (D.N.J. Nov. 14, 2014) (quoting *Doe v. Schwerzler*, No. 06-cv-3529, 2008 WL 4066338, at *5 (D.N.J. Aug. 27, 2008)).

Here, the Court finds that Plaintiff has alleged facts sufficient to support a claim for aiding and abetting discriminatory conduct. Specifically, Plaintiff states that the Defendant ServPro, through its HR representative, "tipped off" O'Donnell Restoration of Plaintiff's complaint and then subsequently "buried" the report for litigation purposes. Am. Compl. at ¶ 123. Plaintiff also charges that ServPro failed to investigate the allegations in the days following the report. While ServPro challenges these allegations are merely conclusory, the Court finds them to be alleged with enough specificity. Further, the short window between Plaintiff's calling ServPro's HR representative and Scott O'Donnell firing her lends credence to Plaintiff's contention that ServPro contacted O'Donnell Restoration and perhaps aided in the subsequent termination.

Finally, the Court finds Defendant's arguments unconvincing, particularly at this stage of the litigation. Again, at the motion to dismiss stage, the Court takes all facts in the light most favorable to the Plaintiff. Plaintiff asserts that ServPro provided information of her complaint to O'Donnell Restoration and failed to conduct a meaningful investigation to protect her from unlawful discrimination and termination. These facts appear to satisfy the *Tarr* factors. *Tarr v. Ciasulli*, 181 N.J. 70, 84 (N.J. 2004). For example, "tipping off" someone purported to have engaged in misconduct and subsequently "burying the report" certainly encourages someone to engage in future discrimination (factor 1). The state of mind of an HR representative, or fellow manager at ServPro, also appears sufficiently malicious (factor 5). Further, the Court's earlier finding that Plaintiff has alleged facts to support a showing of an agency relationship between ServPro and O'Donnell Restoration shows a nexus between ServPro's HR representative and

Mr. O'Donnell (factors 3 and 4). Even though Plaintiff does not allege that ServPro was "present" during the termination (factor 2), Plaintiff alleges facts to support the other four factors. The Court therefore **DENIES** Defendant's motion to dismiss Count VII.

IV. **CONCLUSION**

For the reasons stated above, this Court **DENIES** Defendant's motion to dismiss Plaintiffs' Amended Complaint as to Counts II, IV, V, VII, and VIII. An Order will follow.

Dated: 08/06/19                                                                               s/ Robert B. Kugler
                                                                                               ROBERT B. KUGLER
                                                                                               United States District Judge